RUTH BOORSTEIN, complainant-respondent,

*v.*

ROSE BOORSTEIN, HARRIS BOORSTEIN and WILLIAM BOORSTEIN, defendants-appellants.

[Argued October 23d, 1946. Decided January 17th, 1947.]

*Messrs. Collins & Corbin* (*Mr. Edward A. Markley* and *Mr. James J. Langan*), for the complainant-respondent.

*Mr. Alfred Brenner,* for the defendants-appellants Rose Boorstein and Harris Boorstein.

*Mr. William Boorstein, pro se.*

The opinion of the court was delivered by

CASE, CHIEF-JUSTICE.

The appeal is from a decree in Chancery (opinion reported in *138 N. J. Eq. 265*) which permanently enjoins the defendants from enforcing a judgment for possession obtained by the defendant Rose Boorstein in the District Court of the City of Bayonne and from taking any steps whatever with respect thereto.

Rose Boorstein is the owner of the premises. She is the wife of Harris Boorstein and the mother of William Boorstein. Complainant, Ruth Boorstein, is the wife of William and was recently granted a maintenance decree against him. (*Cf. Boorstein* v. *Boorstein, 138 N. J. Eq. 143.*) Rose began the dispossess action in the District Court by filing an affidavit which named William and Ruth as co-tenants. When the matter came on for trial she discontinued against Ruth who was present and who, by her attorney, and for reasons hereinafter stated, objected to the discontinuance. Judgment of possession was rendered against William. Thereupon Ruth went into the Court of Chancery with her present bill of complaint charging that there had been an oral gift of the premises to her and her husband and that the judgment in the District Court had been obtained through fraud in that the defendants "fraudulently colluded with each other in obtaining said judgment * * * for the purpose of denying to complainant her constitutional right to have a hearing before a court of competent jurisdiction to pass upon her asserted right to continue in possession of said premises," and praying that an injunction issue to restrain the defendants from enforcing the District Court judgment.

Respondent does not hold title to the property and has no right upon which a claim to title may be established. By

her own testimony and by the admissions in her brief she was not and is not a tenant. Without vestige of title and with none of the rights of a tenant she presents herself as a mere invitee and as such seeks to restrain the operation of the District Court judgment upon the charge that the judgment was obtained by fraud.

What was the fraud? The allegation is that the owner conspired with the owner's husband and son to present a sham case of tenancy on the son's part and to exclude respondent from defending at the trial. Let us consider the proofs.

The proof chiefly relied upon to sustain the charge of fraud is the allegation in the affidavit by which Rose instituted the dispossess action. That affidavit gave in one instance the name of the "defendant" as "Ruth Boorstein and William Boorstein." Except for the mention of two names all references were to the "defendant," in the singular, and where a pronoun of gender was used in referring to the defendant the pronoun was "he." Ruth and William having, as stated, been named were both served with the summons. When the cause came on for trial the landlord moved and was ultimately granted, by court order, a discontinuance against Ruth. The District Court was a court of competent jurisdiction both as to the subject-matter and parties. As appears by an exhibit hereinafter mentioned, it heard Ruth's attorney, at length, in opposition to the motion for discontinuance and decided against her. Counsel for Ruth did not suggest to the District Court that she claimed a gift of the property made either orally or otherwise, or that she rested possession upon an entry so obtained. He suggested that such a procedure as discontinuing could be done collusively, but made no charge of fraud or collusion in the instant case; this, although it was then assumed, on the record, by court and counsel, that William would not defend the suit. Counsel's argument was that the filed affidavit of the landlord was jurisdictional and that the landlord could not, as a matter of law, effect a discontinuance as to Ruth without discontinuing also as to William, that there could be a discontinuance against both upon such terms as the court might fix and a

new action against William alone, but that the court lacked jurisdiction to order a discontinuance as to Ruth only. After extended argument counsel for both sides agreed, with court assent, that the case against William should go to trial forthwith and the determination thereof be held in abeyance pending an adjourned day when counsel for Ruth, not at the time fully prepared, would further argue the motion for discontinuance; the case against Ruth and the full determination to be disposed of in accordance with the decision then reached. That arrangement came to naught because when the case against William was moved Ruth's attorney insisted upon the right of cross-examination throughout, whereupon the court concluded that an impasse had been reached and granted the discontinuance.

If Ruth was sound in her contention that the court ruling against her was without jurisdiction she had means of redress in the law courts. Moreover, complainant charged in her bill in Chancery, and charges now, that "the jurisdictional affidavit filed by Rose Boorstein was made fraudulently for the purpose of attempting to give the Bayonne District Court jurisdiction to dispossess William Boorstein, a person not in possession who was colluding with Rose Boorstein, his mother, the plaintiff in said dispossession proceedings, all of which was done as part of a fraudulent scheme to evict complainant without a hearing." Those were matters which purport to have antedated the judgment, and it seems that they, with their implications of fraud, should have been presented, not in Chancery, but in an appropriate application to the court wherein the judgment was rendered. *Schierstead* v. *Somers, 115 N. J. Eq. 140.* But we rest our determination upon broader grounds and pass this phase of the argument with the observation that a charge of fraud against a judgment entered under those circumstances should be supported by clear and convincing proof.

Ruth's testimony in the Court of Chancery was that she and her husband moved into the house following oral statements by Rose and Harris that the property was a gift to William and Ruth. It was there held that because of the statute of frauds no title passed to either Ruth or William;

and that holding is not now in dispute. Ruth further testified:

"*Q.* Did you ever agree to pay any rent to Rose Boorstein or the defendant Harris Boorstein? *A.* No, we did not. I did not. *Q.* You never did? *A.* That's right."

We understand the final answer to be a correction from "We did not" to "I did not." At the same court session at which Ruth so testified the testimony taken at the dispossess proceeding—at which Ruth and her attorney were both present although not participating—was put in proof. By that exhibit, already referred to, it appears that both Harris and William testified that William, prior to May 1st, 1937, and at the beginning of the occupancy, entered into a rental agreement effective from that date, whereby rent was to be paid at the rate of $25 per month; that rent was paid by William accordingly until the end of 1941; that then there was further agreement between William and Rose whereby the rent was increased to $50 per month; that rental was paid at the last mentioned rate until and including December, 1943; and that from and after January 1st, 1944, the rent remained unpaid. Harris Boorstein produced the rent books showing those receipts and defaults; and William produced his banked checks showing the payment of the rental month by month. It otherwise appears that the checks were in the possession of Ruth's counsel, for inspection, in the maintenance suit at the time that action was pending. Ruth did not deny the truthfulness of that testimony. In the light of those proofs we consider that her brief statement that *she* did not agree to pay rent was a studied avoidance of the salient fact that there was rental agreement made by her husband. Her testimony does, however, serve this purpose—it confirms the position of the other side that she did not make the rental agreement and, therefore, that she was properly omitted from the District Court action. Lacking contradiction by her, we are satisfied that not only did her husband, William, make, and over a long period comply with, such a rental agreement, but that Ruth had full knowledge thereof. The reasonable conclusion is that William, following the usual course of the head of a household, made the rental

agreement, that he was the one proper and necessary party to the dispossess action, that his possession embraced Ruth's possession and that her rights therein ended with his. Even though, because of marital differences, William was not himself, during recent years, physically present at the house, his family, with whose support he was charged, resided there by reason of his legal possession as tenant. There is nothing to show that the legal possession or the rights and obligations of tenancy were transferred from William to Ruth. If Rose erred either purposely or otherwise in that paragraph of her jurisdictional affidavit which named Ruth was a co-tenant, the error did not harm Ruth. The latter was later eliminated from the dispossess action as thoroughly as though she had never been named. It can hardly be said that there is fraud in the bare fact of omitting to name as a defendant in a suit for possession against a tenant one whose claim is that she is not a tenant. Indeed, as we have said, Ruth's attorney, before the District Court, conceded the propriety of discontinuing against both defendants and starting anew against William only. And so far as fraud is concerned we see little difference between that procedure and discontinuing as to one of the defendants already named. It is difficult to spell collusive fraud from the presentation of evidence the truthfulness of which is not denied and the efficacy of which, if true, to sustain a finding of the making and the breach of a rental agreement is apparent.

The basic ground upon which respondent seeks equitable relief is that the District Court judgment was fraudulently obtained. We find no convincing proof of fraud.

The decree under review will be reversed, and the record remanded to Chancery to the end that the bill of complaint be dismissed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER. BODINE, DONGES, HEHER, PERSKIE, COLIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 15.